E-FILED
Tuesday, 04 November, 2014 04:40:44 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| PAUL F. MORICONI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 11-cv-3022 |
| ) | |
| TRAVIS KOESTER, et al., ) | |
| ) | |
| Defendants, ) | |
| ) | |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendants' Motion for Summary Judgment (d/e 85) (Motion 85); Plaintiff's Response to Defendants' Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment (d/e 91) (Motion 91); Defendants' Motion to Strike Plaintiff's Motion for Summary Judgment (d/e 90) (Motion 90); and Defendants' Motion to Strike Plaintiff's Affidavit (d/e 92) (Motion 92). The parties consented to have this matter heard before this Court. Consent to the Exercise of Jurisdiction by a United States Magistrate Judge and Reference Order entered April 11, 2014 (d/e 74).

Plaintiff Paul F. Moriconi was required to respond to Motions 90 and 92 within fourteen days of the date that those Motions were served on him. He has not done so. Pursuant to Local Rule 7.1(B)(2), Plaintiff's failure to respond creates the presumption that there is no opposition to the motions. Motions 90 and 92 are ALLOWED as unopposed. The Court strikes Motion 91 and the affidavit of Plaintiff Paul F. Moriconi attached to Motion 91 and to Moriconi's Response to Defendants' Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment (d/e 89) (Moriconi Response).

The only remaining Motion is Motion 85, Defendants' Motion for Summary Judgment. For the reasons set forth below, Motion 85 is ALLOWED in part and DENIED in part.

## STATEMENT OF FACTS

For purposes of Motion 85, the Court must view the evidence in the light most favorable to Moriconi. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The Court, therefore, will state the facts based on Moriconi's version of the events. The Court relies on Moriconi's deposition testimony and does not consider his stricken affidavit. The Court recognizes that the Defendants dispute Moriconi's version of the events. Such disputes only establish that issues of fact exist and do not entitle the Defendants to summary judgment.

The relevant events occurred during the late evening of July 28 and early morning of July 29, 2009. At that time, Moriconi was at a bar in Springfield, Illinois, called Bootleggers Tavern (Bar). Moriconi was the owner of the Bar. Late in the evening of July 28, two women started fighting at the Bar. One woman was injured; Moriconi testified in his deposition that "somehow she had her head busted open." <u>Moriconi Response</u>, attached <u>Moriconi Deposition</u>, at 16. At that point, Moriconi had someone call the police. The boyfriend of the woman who started the fight also started a fight. Moriconi wanted the persons responsible to be arrested. <u>Id.</u> at 17.

The woman who started the fight tried to leave. A part-time employee at the Bar named Nick Zitach (Zitach) caught the woman who started the fight in the parking lot. Zitach held her down so that she could not leave. <u>Id.</u> at 16-17. Defendant Sangamon County, Illinois, Deputy Sheriff Travis Koester arrived at the scene. Sangamon County, Illinois, Deputy Sheriff Brad Tweryon was also at the scene. Other officers arrived at the scene during the incident.

Moriconi walked out of the Bar to the parking lot to talk to the officers. Moriconi stated that he owned the Bar and he called the police. As soon as Moriconi walked outside, Koester told Moriconi to stop and said, "I don't

care who you are, put your hands over your head." Id. at 18, 20. Moriconi testified that he stood still and told Koester that he could not put his hands over his head because he was crippled. Koester said, "I'm not going to tell you twice," and shot Moriconi with a Taser. Id. at 18, 22.[1] Moriconi testified that he did not yell at the police. Id. at 21. He testified that he did not remember anything after he told Koester that he was crippled. Moriconi testified in his deposition, "[N]ext thing I know I got hit in that incident. Next thing, you know, I got to sit there and just get electrocuted basically." Id. at 20-21.

Moriconi fell to the ground. Koester shocked Moriconi four more times with the Taser while Moriconi was on the ground. Id. at 26. Koester told Moriconi to put his hand behind his back. Moriconi testified that he told Koester that could not put his hands behind his back because his arm was paralyzed. Id. at 23. Moriconi testified that he did not struggle with the officers. Id. at 27. Moriconi was handcuffed and placed in a squad car. He did not remember who handcuffed him. Id. at 27-28. Koester arrested Moriconi for obstruction of justice. No evidence has been presented that Moriconi was ever tried on the charge or that a judge ever made a finding of probable cause on the charge.

---

[1] Moriconi's testimony is ambiguous on this point. He said both that he was walking and standing still. Moriconi Deposition, at 22. The Court views the evidence in the light most favorable to Moriconi.

Moriconi testified that he may have drunk socially on the evening of July 28 before the incident. Moriconi testified that he had been at the Bar since 4:00 p.m., and had consumed two or three alcoholic drinks and some soda since 4:00 p.m. Id. at 29-30. Moriconi had not taken any pain medication that evening. Id.

Based on these facts, Moriconi brings claims against Defendant Koester under 42 U.S.C. §1983 for violations of the Fourth Amendment for illegal arrest without probable cause and for use of excessive force (Count I). Moriconi brings a claim against Sangamon County, Illinois (County), for indemnification of Koester under state law (Count III). Second Amended Complaint (d/e 51).[2] The Defendants move for summary judgment.

## ANALYSIS

Defendants now move for summary judgment. At summary judgment, the Defendants must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Moriconi. Any doubt as to the existence of a genuine issue for trial must be resolved against the Defendants.

---

[2] Moriconi also brought a claim against Deputy Brad Tweryon in Count II of the Second Amended Complaint. Moriconi voluntarily dismissed the claims against Tweryon with prejudice. Stipulation and order of Dismissal With Prejudice (d/e 71).

Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  Once the Defendants have met their burden, Moriconi must present evidence to show that issues of fact remain with respect to an issue essential to his case, and on which he will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In this case, issue of fact exists.

Moriconi alleges two claims against Koester, excessive force and false arrest without probable cause.  Excessive force claims in this context are measured by using a Fourth Amendment standard of "objective reasonableness," in which the officer's actions are viewed from, "the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight."  Graham v. Conner, 490 U.S. 386, 396-97 (1989).  The use of force is unconstitutional if, "judging from the totality of circumstances at the time of the arrest, [the officer] used greater force then was reasonably necessary to make the arrest."  Lester v. City of Chicago, 830 F.2d 706, 713 (7th Cir. 1987).

The evidence, when viewed in the light most favorable to Moriconi, shows that the force was excessive.  Moriconi walked out of the Bar. Moriconi stated that he owned the Bar and he called the police.  Moriconi was not yelling at the officers.  Koester told him to stop and raise his hands

over his head. Moriconi stood still and told Koester that he could not because he was crippled. Koester said that he would not warn Moriconi twice and Koester shot Moriconi with a Taser. Moriconi fell to the ground. Moriconi did not struggle with the officers while he was on the ground. Koester shocked Moriconi four more times. Moriconi told Koester he could not put his arm behind his back because it was paralyzed. A jury could conclude that a reasonable officer under these circumstance would not shoot such a person with a Taser and then shock the person four more times.

The Defendants argue that Moriconi was intoxicated at the time of the incident. Moriconi testified that he had three drinks over the course of six to eight hours, from 4:00 p.m. on July 28, 2009, to the early morning of July 29, 2009. A jury could conclude that a person could consume three drinks over eight hours without becoming intoxicated. Whether he was intoxicated is an issue of fact.

Beyond just intoxication, the Defendants materially dispute Moriconi's version of the facts in many respects. That dispute, however, is for the jury to decide. Issues of fact exist regarding whether Koester violated Moriconi's Fourth Amendment Rights by using excessive force.

Moriconi also claims that Koester violated his rights by arresting him and detaining him illegally. An illegal arrest occurs if the officer lacks probable cause to arrest. Lawson v. Veruchi, 637 F.3d 699, 703 (7th Cir. 2011). The existence of probable cause is determined objectively based on the facts and circumstances known to the officer at the time. Those facts and circumstances must be "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." Id.

Koester arrested Moriconi for obstruction of justice. Obstruction of justice under Illinois law occurs when a person knows the officer is a peace officer, and knowingly resists or obstructs the officer's performance of an authorized act. 720 ILCS 5/31-1(a). In this case, the evidence, viewed in the light most favorable to Moriconi, shows that Moriconi stepped out of the Bar, Koester told Moriconi to stop and raise his hands above his head, Moriconi stood still and told Koester that he could not raise his hands because he was crippled, and Koester shot Moriconi with a Taser and arrested him. A jury that believed Moriconi's version of the evidence could conclude that a reasonable officer would not have a basis to believe that Moriconi obstructed or resisted the officer, and so, would not have probable cause to arrest Moriconi for obstruction.

The Defendants again dispute Moriconi's version of events. That dispute is for the jury to decide. Issues of fact exist regarding whether Koester violated Moriconi's rights by arresting him without probable cause.

The Defendants argue in the alternative that Koester is entitled to the affirmative defense of qualified immunity on Moriconi's claims. Koester is entitled to qualified immunity unless Moriconi can point to clearly established constitutional law existing at the time of the incident that put Koester on notice that his conduct was unconstitutional. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Moriconi can show that Koester used unconstitutional excessive force in light of clearly established controlling authority by:

> (1) pointing to a closely analogous case that established a right to be free from the type of force that police officers used on him, or (2) showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment.

Chelios v. Heavener, 520 F.3d 678, 691 (7th Cir. 2008) (quoting Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1996).

If Moriconi's version of the events is believed, the force was clearly excessive. Moriconi stepped out of the Bar; Moriconi told Koester that he owned the Bar and called the police; Moriconi was not yelling; Koester told Moriconi to stop and raise his hands; Moriconi stood still and explained to

Koester that he could not raise his arm because he was crippled. Moriconi did not struggle with the officers. Shooting Moriconi with a Taser under these circumstances was clearly excessive, and shocking him four more times while he lay on the ground was also excessive. When the facts are viewed in the light most favorable to Moriconi, Koester is not entitled to qualified immunity on the excessive force claim.

With respect to the illegal arrest claim, existing constitutional law clearly established that an officer could not arrest a person without probable cause. See Lawson, 637 F.3d at 703. The Illinois Supreme Court had also clearly established that Koester did not have probable cause to arrest Moriconi for obstruction of justice based on Moriconi's version of the events. The Illinois Supreme Court established in People v. Raby, 40 Ill.2d, 240 N.E.2d 595 (Ill. 1968), that in order to commit the offense of obstruction of justice, a person must take some affirmative act to interfere or obstruct a police officer,

> 'Resisting' or 'resistance' means 'withstanding the force or effect of' or the 'exertion of oneself to counteract or defeat'. 'Obstruct' means 'to be or come in the way of'. These terms are alike in that they imply some physical act or exertion. Given a reasonable and natural construction, these terms do not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding

a third party to avoid arrest.'  We agree with these observations, . . . .

People v. Raby, 40 Ill. 2d 392, 399, 240 N.E.2d 595, 599 (1968) (quoting Landry v. Daley, 280 F.Supp. 939, 959 (N.D. Ill. 1968) (internal citation omitted.  If Moriconi's version of events is believed, he did nothing to interfere or obstruct any officer.  He walked out of the Bar, he told Koester he owned the Bar and had called the police, he stood still when Koester told him to stop, and he told Koester he could not raise his arm because he was crippled.  According to Moriconi, he did nothing to interfere or obstruct any officer.  If so, Koester was on notice that he had no probable cause to arrest Moriconi for obstruction.  He also knew that arresting a person without probable cause violated the Fourth Amendment.  When the evidence is viewed favorably to Moriconi, Koester is not entitled to summary judgment based on a defense of qualified immunity.

The Defendants also argue that the County is entitled to summary judgment on any claim in Count I of direct municipal liability against the County for violation of Moriconi's rights.  See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-91 (1978).  Sangamon County is named as a Defendant only in Count III of the Second Amended Complaint.  It appears that no Monell claim is asserted against Sangamon County as the complaint indicates that "Sangamon County is

only named as a defendant for proposed [sic] of indemnification". In any event, Moriconi concedes that he has no evidence to establish direct municipal liability against the County, and voluntarily dismisses any such claim. Moriconi Response, at 38. The Court allows the County's request for partial summary judgment on any §1983 claim of direct municipal liability against the County which may be alleged in Count I or Count III. The County remains a Defendant for purposes of indemnification under the state law claim under 745 ILCS 10/9-102 for indemnification in Count III.

Although Neil Williamson, Sheriff of Sangamon County, still remains in the caption of the Second Amended Complaint, there is no allegation of any claim against Williamson individually or in his official capacity in the Second Amended Complaint, and, in fact, Williamson was previously terminated as a defendant (Text Order, 10/5/2011) and remains terminated as a defendant in this case (Text Order, 10/19/2011). There is no pending claim against Sheriff Williamson.

WHEREFORE Defendants' Motion for Summary Judgment (d/e 85) is ALLOWED in part and DENIED in part; Plaintiff's Response to Defendants' Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment (d/e 91) is STRICKEN; Defendants' Motion to Strike Plaintiff's

Motion for Summary Judgment (d/e 90) and Defendants' Motion to Strike Plaintiff's Affidavit (d/e 92) are ALLOWED.

ENTER: November 4, 2014

<u>*s/ Tom Schanzle-Haskins*</u>
UNITED STATES MAGISTRATE JUDGE